UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                          )
**ROGER MAGALHAES**                       )
on behalf of himself and others             )
similarly situated,                                   )
                                                          )
        **Plaintiff,**                                )
                                                          )
        v.                                               )    Civil Action No. 13-10666-DJC
                                                          )
**LOWE'S HOME CENTERS, INC.,**        )
                                                          )
        **Defendant.**                             )
                                                          )
_____)

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                      **March 10, 2014**

## I.    Introduction

This is a putative class action in which the named plaintiff and proposed class representatives (collectively, "Plaintiffs") allege that the defendant Lowe's Home Center, Inc. ("Lowe's") misclassified Plaintiffs as independent contractors in violation of Mass. Gen. L. c. 149 § 148B ("Section 148B"). Plaintiffs have now moved for class certification. D. 26. For the reasons set forth below, their motion is DENIED.

## II.   Factual Background[1]

Lowe's is a home improvement retailer that operates 1,715 stores in the U.S., with twenty-seven stores in Massachusetts. D. 27 at 2. In its 2012 SEC Form 10-K, Lowe's stated that it offers "installation services through independent contractors in many of our product categories [including] Flooring, Millwork and Cabinets & Countertops." Id. When a customer

---

[1] The Court draws the facts from the parties' submissions in support of and in opposition to Plaintiffs' motion for class certification.

purchases a product and desires an installation, Lowe's subcontracts the installation to one of its installers. D. 28 at 7. Since 2006, Magalhaes was part of this operation, installing window shades and blinds for Lowe's as a "Legacy" or "Type 1" installer. D. 27 at 7. Lowe's classified Magalhaes as an independent contractor. Id. Consequently, Magalhaes paid self-employment taxes, carried his own worker's compensation and liability insurance and did not receive health insurance, life insurance, sick pay and a 401(k) savings plan from Lowe's. Id. at 8. During his retention process, Magalhaes was interviewed by a Lowe's Area Installation Manager. Id. He also submitted to a background check as a condition of his contract with Lowe's. Id.

Magalhaes operates his installations through the company Shades In Place, Inc. ("Shades In Place"), of which he is the President. D. 28 at 10. Shades In Place focuses on the sale of high end window treatments and installations. Id. Magalhaes started the company in 2006 and incorporated it in 2011. Id. He has two employees and leases 1,000 square feet of office and showroom space. Id. at 11. Shades In Place owns two vehicles that bear its company logo, owns its own tools, operates its own website and engages in its own advertising. Id. It also maintains its own bank accounts and carries its own insurance. Id. at 11. Magalhaes concedes that he scheduled all of his own jobs (even when Lowe's was the source of work), determined which of his employees would perform the work and how much each employee would get paid. Id. Magalhaes had the right to turn down work and did so regularly. Id. at 12.

Like all installers, Magalhaes was required to sign a standard form contract with Lowe's. D. 27 at 8. Lowe's requires the principal of each business with which Lowe's contracts to sign a similar contract. Id. The only differences in the contracts are the portions that define what types of products an installer sets up, the amount of insurance coverage required and the installer's compensation. Id. The contracts provide that all installers must comply with Lowe's Standards

of Courtesy and Professionalism, follow Lowe's procedures related to installation, execute all proper paperwork and coordinate their schedules with Lowe's "Production Office." Id. at 10. Installers may not change the scope of an installation without prior approval from Lowe's. Id. at 11.

Despite these restrictions, the contracts provide that the "Installer has the full right to determine, and the responsibility for, the method, manner, and control of the work to be performed." D. 28 at 7. Installers use their own tools, set their own schedules and have autonomy over their methods. Id. Lowe's pays installers per job and leaves it to the installers to determine how to staff each individual project. Id. Some installers have employees of their own whom installers staff on projects of their choice. Id. Lowe's does not guarantee jobs to installers, who are free to decline jobs from Lowe's or work on jobs entirely unrelated to Lowe's. Id. at 12. The installers vary significantly in the way that they operate. Id. at 8-9. One flooring installer has his own flooring business with 15 employees and regularly uses three subcontractors for his Lowe's projects. Id. at 8. One storm door installer, meanwhile has no employees and performs all of the physical labor himself. Id. Another installer, a roofer, obtains merely 20 percent of his work from Lowe's. Id.

Installer interaction with Lowe's also varies from installer to installer. Id. at 9-10. Some installers reported that a Lowe's representative would visit their jobsite only 10 percent of the time, while others reported that their representatives would visit their jobsite 50 percent of the time. Id. at 9. One flooring installer has no interaction with Lowe's other than emails and faxes exchanged at the beginning and end of a job. Id. at 10.

### III.   Procedural History

Plaintiffs commenced this action in Suffolk Superior Court on January 28, 2013.  D. 6-2 at 1.  Lowe's removed the case to this Court on March 22, 2013.  D. 1.  Plaintiffs moved to certify the class on August 20, 2013.  D. 26.  The proposed class is:

> All persons who installed products for [Lowe's] or performed installation services for Lowe's in the Commonwealth of Massachusetts as Type I Installers and who were misclassified and treated as independent contractors by Lowe's.  Excluded from the Class are independent contractors who are classified as general contractors by Lowe's and the employees of the general contractors.

D. 6-2 at 2.  The Court heard the parties on January 7, 2014 and took this matter under advisement.  D. 39.

The Court notes that there is a prior related action, D'Italia v. Lowe's Home Centers, Inc., No. 11-4758-BLS1 (Mass. Super. Aug. 20, 2013) (unpublished, but available at D. 27-18).  The D'Italia plaintiffs sought to certify a class of contractors who worked as installers at Lowe's that included both Type 1 installers and general contractors.  Id. at 3.  The Massachusetts Superior Court certified the class, in part, as to general contractors, yet it declined to include Type 1 or "Legacy" contractors in the class.  Id. at 14.  The D'Italia court noted that the standard form contract for Type 1 installers was not in the record, but it considered that "[a]s respects control-in-fact, it appears that because their projects are generally similar, Legacy contractors generally function more independently than General Contractor installers." Id. at 15.  The court later denied summary judgment to the remaining class plaintiffs, noting that factual issues remained as to whether Lowe's exerted actual control over many of the class members.  D'Italia v. Lowe's Home Center, Inc., No. 11-4758-BLS1 (Mass. Super. Ct. Oct. 31, 2013) ["D'Italia II"] (unpublished).

**IV.    Discussion**

    **A.    <u>Burden of Proof and Standard of Review</u>**

Plaintiffs move for class certification pursuant to Fed. R. Civ. P. 23(b)(3). A class action may be certified under this rule only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a); <u>In re New Motor Vehicles Canadian Export Antitrust Litig.</u>, 522 F.3d 6, 18-19 (1st Cir. 2008). In addition to these factors—numerosity, commonality, typicality and adequacy of representation—since the named Plaintiffs have moved to certified the class under Fed. R. Civ. P. 23(b)(3), this Court must also determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3); <u>Motor Vehicles</u>, 522 F.3d at 19. The plaintiffs have the burden of showing that all the prerequisites for a class action have been met. <u>Makuc v. American Honda Motor Co., Inc.</u>, 835 F.2d 389, 394 (1st Cir. 1987). The Court "must conduct a rigorous analysis of the prerequisites established by Rule 23 before certifying a class" and thus, must independently decide whether all of these factors have been met. <u>Smilow v. Southwestern Bell Mobile Systems, Inc.</u>, 323 F.3d 32, 38 (1st Cir. 2003) (citing <u>Gen. Tel. Co. v. Falcon</u>, 457 U.S. 147, 161 (1982)). The Court shall address each of Fed. R. Civ. P. 23(a) and 23(b)(3) factors in turn.

    **B.    <u>The Applicable Substantive Law</u>**

Section 148B provides, in relevant part, that:

5

>(a) For the purpose of this chapter and chapter 151, an individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:--
>
>(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact ["Prong A"]; and
>
>(2) the service is performed outside the usual course of the business of the employer ["Prong B"]; and
>
>(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed ["Prong C"].

Mass. Gen. L. c. 149, § 148B (2013). Particularly of note is that unlike the common law tests operative in other states, Section 148B requires independent contractors to be free from control "*both* under his contract . . . *and* in fact." Id. (emphasis added). That is, even if a contractor is free from her principal's control as a matter of contract, she may still be properly classified as an employee if the principal retains control as a matter of fact. Schwann v. FedEx Ground Package Sys., Inc., No. 11-11094-RGS, 2013 WL 1292432, at *3 (D. Mass. Apr. 1, 2013). "Failure to establish a single prong . . . doom[s] the [employer's] classification of its employees as independent contractors." Massachusetts Delivery Ass'n v. Coakley, No. 10-11521-DJC, 2013 WL 5441726, at *4 (D. Mass. Sept. 26, 2013) (citing Auwah v. Coverall N. Am., Inc., 707 F. Supp. 2d 80, 82 (D. Mass. 2010)).

    **C.**    **Addressing the Fed. R. Civ. P. 23 Factors**

        *1.*    *Plaintiffs Have Established Numerosity*

To bring a class action "the class [must be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a) (1). "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." Adver. Special. Nat. Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956). The finding of impracticability is a matter of

discretion for the Court.  Id.  The absolute number of class members is not the sole determining factor, and "[t]here is no threshold number of class members that automatically satisfies this requirement."  Shanley v. Cadle, 277 F.R.D. 63, 68 (D. Mass. 2011) (citing Gen. Tel. Co. of the Nw. v. EEOC, 446 U.S. 318, 329 (1980)).  That said, courts have generally found that a class size of forty or more individuals will satisfy the numerosity requirement.  In re Relafen Antitrust Litigation, 218 F.R.D. 337, 342 (D. Mass. 2003) (citation omitted).

The Defendants do not appear to dispute numerosity.  However, even upon independent review, the Court finds that Plaintiffs have met this requirement.  Here, the Plaintiffs have alleged that the class contains approximately 330 individuals.  D. 27 at 13.  Based on the plaintiffs' allegations, the Court finds that the proposed class is sufficiently numerous as to make joinder of all members impracticable.

### 2. *Plaintiffs Have Not Established Commonality*

To proceed as a class action, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court has noted that this "language is easy to misread, since '[a]ny competently crafted class complaint literally raises common "questions."' . . . What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2551 (2011) (quoting Richard Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-132 (2009)).  The "Plaintiffs' claims must depend upon a common contention [that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id. at 2551.

Plaintiffs argue that there are common questions of law to all class members because they have all "suffered the exact same wrong." D. 27 at 14. As to questions of fact, Plaintiffs argue that "[t]he contracts governing the class members' work for Lowe's are virtually identical" and that "Lowe's systematically applies the same types of policies to its relationships with Type 1 installers." Id.

The Court disagrees. Even assuming that each class member signed an identical contract with Lowe's, this does not demonstrate that there are common issues of fact, which bind together the putative class members' proof on Prong A of Section 148B. To demonstrate that the installers are not employees, there must be a showing that they were free from control as a matter of contract and as a matter of fact. Mass. Gen. L. c. 149, § 148B(a)(1). This analysis "require[s] individualized factual inquiries." Schwann, 2013 WL 1292432, at *3. As another court stated in denying class certification for a class of plaintiffs seeking relief under Section 148B, "[w]hether the [governing] Agreement vests too much control in [the employer] is a common question, but it is just one of several." In re FedEx Ground Package Sys., Inc., Employment Practices Litig., 283 F.R.D. 427, 458 (N.D. Ind. 2012) (applying Massachusetts law). The facts of this case demonstrate the need for individualized factual inquiries with respect to Lowe's actual control-in-fact of the installers. For example, the installers report various levels of interaction with Lowe's representatives and various degrees of dependence on Lowe's workflow. D. 28 at 9-10. Some installers have W-2 employees and some do not. D. 41 at 9. The amount of contact that the employees have with Lowe's also varies. D. 28 at 21. Some installers report more interaction with Lowe's when customers complain to Lowe's, which adds a further degree of uncertainty to the level of control Lowe's asserts. D. 29-1 at 1. Still other installers report that the amount of interaction they have with Lowe's depends on the nature of the job. D. 29-1 at 2.

While some installers report that Lowe's supervises their work 1-2% of the time, others report that Lowe's supervises their work 20% of the time. Id. at 3. That there is a varied level of interaction demonstrates that actual control-in-fact varies significantly among installers. This Court therefore agrees with notion that the level of control an employer exerts over his employee is an individualized factual inquiry.

The Court also finds persuasive the D'Italia court's holding in the related action. As discussed above, the D'Italia court found that "[a]s respects control-in-fact, it appears that because their projects are generally similar, Legacy contractors generally function more independently than General Contractor installers." D. 27-18 at 15. It also tracks a similar case decided by another judge in this district, who ruled that claims arising under either Prong A or C of Section 148B were not amenable to class actions. Schwann, 2013 WL 1292432, at *3.

If there is a failure to show that meet any individual prong of Section 148B, then the Plaintiffs will be deemed employees and not independent contractors. Accordingly, to the extent that Plaintiffs argue that "freedom in fact need never be reached because [Lowe's] will be unable to carry its burden of showing freedom from control under the [contracts], making the plaintiffs employees," this Court declines to jump to predicting the outcome here when "this is not the time for decision on the merits." FedEx, 283 F.R.D. at 457-58; see also Amgen, Inc. v. Conn. Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1195 (2013) (quoting Fed R. Civ. P. 23 advisory committee's note stating "an evaluation of the probable outcome on the merits is not properly part of the certification decision").

Plaintiffs' claims fare no better as to Prongs B and C of Section 148B, as these present individualized inquiries as well. Under Prong B, the installers are employees unless their "service is performed outside the usual course of the business of [Lowe's]. Mass. Gen. L. c. 149,

§ 148B(a)(2). "[T]he relevant inquiry is whether the service provided is necessary to the defendant's business or merely incidental to it." D'Italia II, No. 11-4758-BLS1 at 2. The installers here provide over fifty different types of installation services, including flooring, roofing and appliance installation. D. 28 at 7. At trial, then, Lowe's will need to offer proof that each of these services is outside Lowe's "usual course of business." Mass. Gen. L. c. 149, § 148B(a)(2). Although Plaintiffs are correct that this "inquiry focuses squarely on Lowe's," it does so for over fifty different industries. D. 28 at 7. Lowe's "either is in the business of kitchen and bath remodeling or it isn't," D'Italia, D. 27-18 at 13, just as it is in the business of flooring or roofing or it isn't. Thus, on this record, the Court cannot say that a class proceeding "will produce a common answer to the crucial question of" whether the installers operated in Lowe's usual course of business. Walmart Stores, Inc., 131 S. Ct. at 2552.

Lowe's cites Martins v. 3PD, Inc., No. 11-11313-DPW, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) for the proposition that "whether [installation services] were in the usual course of [Lowe's] business . . . present[s] common issues of law and fact." Id. at *6. Martins, however, certified a class of delivery drivers, all of whom performed the same service. Id. at *1. Accordingly, Martins certified a class of plaintiffs that was far more homogenous than the proposed class here.

Lowe's also cites DeGiovanni v. Jani-King Intern., Inc., 262 F.R.D. 71 (D. Mass. 2009). Like the Schwann court, "this court is not persuaded that the first and third prongs of section 148B may be answered with reference to common facts, as the district court held in Jani-King." See Schwann, 2013 WL 1292432, at *3 n.1. What further distinguishes Jani-King from this case, however, is that, as in Martins, the Jani-King plaintiffs performed only one service for the

10

employer: cleaning services. Jani-King, 262 F.R.D. at 75. Accordingly, like Martins, Jami-King is distinguishable on this ground alone.[2]

Similarly, Prong C requires Lowe's to demonstrate that the installers are "customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." Mass. Gen. L. c. 149, § 148B(a)(3). Like Prongs A and B, Prong C "require[s an] individualized factual inquir[y]." Schwann, 2013 WL 1292432, at *3. As Lowe's has shown, some installers have their own incorporated businesses, like Magalhaes, while others do not. D. 28 at 8-11. Some have employees, like Magalhaes, while others do not. Id. Accordingly, there are not common issues of fact with respect to Prong C.

### 3. *Plaintiffs Have Not Established Typicality*

A class action requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Walmart Stores, Inc., 131 S. Ct. at 2551 n.5 (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157-158, n.13 (1982)). Commonality looks at the relationship among the class members generally, while typicality focuses on the relationship between the proposed class representative

---

[2] Plaintiffs also cites Shepard v. Lowe's HIW, Inc., No. 12-3893, 2013 WL 4488802 (N.D. Cal. Aug. 19, 2013), but this case applies California law, whose definition of "employee" depends in its first prong of a three-prong test on the "right to control" and not actual control. Cal. Lab. Code § 2750.5(a).

and the rest of the class.  See generally 1 William B. Rubenstein, Newberg on Class Actions § 3:26 (5th ed. 2012).

"The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class."  Barry v. Moran, No. 05-10528-RCL, 2008 WL 7526753 at *11 (D. Mass. Apr. 7, 2008) (quoting McLaughlin v. Liberty Mut. Ins. Co., 224 F.R.D. 304, 310 (D. Mass. 2004)).  In evaluating typicality, the Court seeks to ensure that the "named plaintiff[s], in presenting [their] case, will necessarily present the claims of the absent plaintiffs."  Randle v. Spectran, 129 F.R.D. 386, 391 (1988) (quoting Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1985)).

Here, Magalhaes shares certain traits with the other putative class members.  For example, Magalhaes signed the same standard form agreement that other putative class members signed.  D. 28 at 7.  His claims assert the same legal theory as other putative class members.  D. 27 at 17.  Nevertheless, the Court finds that Magalhaes is not a typical member of the class.  Magalhaes owns his own business that has two employees and its own equipment, which puts him in a materially different position than some other installers.  D. 28 at 10-11.  His level of interaction with Lowe's personnel varies significantly from that of other installers.  Id. at 8-11.  He performed the installations of window treatments, whereas other installers performed flooring, roofing and other services.  Id.  As a result, his likelihood of success on a misclassification claim is significantly different than an installer who exclusively earns money through Lowe's referrals, or who takes direction from Lowe's representatives or whose services have a far greater nexus to Lowe's core business.  See Mass. Gen. L c. 149, § 148B(a)(1)-(3).  Accordingly, Magalhaes has not demonstrated that he is typical of the putative class.  See Barry,

2008 WL 7526753, at *12 (finding no typicality because plaintiffs would be required to present "an individualized showing").

    *4.    Adequacy of Representation*

The Court must evaluate whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); see Andrews v. Bechtel Power Co., 780 F.2d 124, 130 (1st Cir. 1985). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem, 521 U.S. at 625-626 (quotation omitted).

The "adequate-representation requirement is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class." Riva v. Ashland, Inc., No. 09-12074-DJC, 2011 WL 6202888, at *10 (D. Mass. Dec. 13, 2011) (citing Gen. Tel. Co. of the Nw., Inc., v. EEOC, 446 U.S. 318, 331 (1980); Albertson's Inc. v. Amalgamated Sugar Co., 503 F.2d 459, 463 (10th Cir. 1974) (noting that "[i]t is axiomatic that a plaintiff cannot maintain a class action when his interests are antagonistic to, or in conflict with, the interests of the persons he would seek to represent") (citing cases); Lockwood Motors, Inc. v. Gen. Motors Corp., 162 F.R.D. 569, 576 (D. Minn. 1995) (noting that adequacy requires that "representative's interests are sufficiently similar to those of the class such that it is unlikely that their goals and viewpoints will diverge")).

Here, Lowe's casts doubt on Magalhaes's ability to fairly and adequately represent the class because his – and, for that matter, every other installer's – contract with Lowe's requires Magalhaes to indemnify Lowe's for any recovery by his employees, whom Magalhaes seeks to incorporate into this very class. D. 28 at 22. Plaintiffs do not dispute this conflict of interest, but

only argue that these indemnifications are void as contrary to public policy. D. 31 at 12. In doing so, plaintiffs cite a number of cases for the proposition that employees cannot be required to indemnify employers for violations of the Fair Labor Standards Act. Id. (collecting cases).

As an initial matter, the Court notes that the enforceability of the indemnification provision is not before the Court, as the Supreme Court has repeatedly cautioned courts against making determinations on the merits at the class certification phase. See Amgen, 133 S. Ct. at 1195. Putting that aside, the cases cited by Plaintiffs are distinguishable. Even accepting that it is against public policy for employers to be indemnified for their own wrongful conduct, this is not what Lowe's has asked the installers to do here. Rather, the contractors indemnify Lowe's not for their own claims, but the claims of their subcontractors. The cases identified by Plaintiffs concern circumstances where employees were required to forfeit their own claims against their employer (and not the claims of others) by requiring that "the employee or employee funds are the sources of indemnification. No reported case the undersigned can find would prohibit contractual third-party indemnification of FLSA claims." Varnell, Struck & Associates, Inc. v. Lowe's Companies, Inc., No. 06-068, 2008 WL 1820830, at *10 & n.2 (W.D.N.C. Apr. 21, 2008) (collecting cases).

In addition, that some installers have employees and others do not further demonstrates Magalhaes's inadequacy to proceed as class representative. Whereas Magalhaes will be required to indemnify Lowe's for its violations of Section 148B as to his employees, other installers who do not have employees have no indemnification obligation. Accordingly, Magalhaes cannot fairly and adequately represent the class. See Riva, 2011 WL 6202888, at *11.

     *5.*     *Common Issues of Law and Fact Do Not Predominate*

Even if Plaintiffs could establish commonality, they could not establish that common issues of law and fact predominate. "[T]he predominance criterion is far more demanding," than the commonality requirement. Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997). In evaluating predominance, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000). In class actions, "common issues do not predominate if the fact of [liability] and [damages] cannot be established through common proof." In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008).

Certainly, whether Lowe's is liable for misclassifying the installers is not susceptible to common proof. As discussed above, the Court has found that Plaintiffs cannot demonstrate that they meet the three prongs of Section 148B without individualized proof. However, even if Prong B can be subject to common proof as at least one court has found under distinguishable facts, Martins, 2013 WL 1320454, at *6, common issues do not predominate over the independent contractor test as a whole because both the first and third prongs require "individualized factual inquiries." Schwann, 2013 WL 1292432, at *3.

**V.**    **Conclusion**

For the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification, D. 26.

    **So Ordered.**

                                               /s/ Denise J. Casper
                                               United States District Judge